ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
JOSEPH E. KOEHLER
Assistant U.S. Attorney
Arizona State Bar No. 013288
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: joe.koehler@usdoj.gov

KENNETH A. BLANCO
Acting Assistant Attorney General
U.S. Department of Justice, Criminal Division
J. MICHAEL SHECKELS
Trial Attorney, HRSP
Maryland Bar Member
1301 New York Ave.
Washington, D.C. 20005
Telephone: 202-305-9055
Email: mike.sheckels@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-17-1382-PHX-JJT (MHB) |
|---|---|
| Plaintiff, | |
| vs. | (SD TX No. CR- 4:16-CR-385-S) |
| RAMAN PATEL, | **PLEA AGREEMENT** |
| Defendant. | |

Plaintiff, United States of America, and the defendant, RAMAN PATEL, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count One of the indictment charging the defendant with a violation of Title 18, United States Code (U.S.C.) § 371 (conspiracy), a Class D felony offense.



2.  **MAXIMUM PENALTIES**

   a. A violation of 8 U.S.C. § 371, is punishable by a maximum fine of not more than $250,000.00 or twice the gross gain or loss from the offense, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

   b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

   (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

   (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

   (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

   (4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

   c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

   d. The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual

certainty that the defendant will be removed or deported from the United States. The defendant agrees that defendant has discussed this eventuality with defendant's attorney. The defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

3. **AGREEMENTS REGARDING SENTENCING**

  a. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that:

  (1) Both the United States and Defendant agree that Defendant should be sentenced to a term of probation. It is understood by the parties that the final determination to accept a plea pursuant to Rule 11(c)(1)(C) ultimately remains in the Court's discretion and, except as provided elsewhere in this agreement, if the Court does not accept the terms of this agreed sentence, then the plea is null and void.

  To the extent the parties' agreed sentence departs from the Court's calculated guidelines range, the agreed sentence departs for justifiable reasons. USSG § 6B1.2(c). The defendant has agreed to plead guilty in a timely manner, and his plea at this juncture will reduce the amount of time and resources to prepare the case for trial and to try the case. Additionally, it is anticipated that the defendant's plea in this case may induce other defendants in this case to consider resolving their cases in lieu of trial. Finally, Defendant is an 82-year old man with a medical history of heart problems and other health issues. Under these circumstances, the agreed sentence achieves justice in holding the defendant responsible for his actions.

  b. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $457,424.36, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant

understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

    c.    Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

    d.    Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

## 4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: Counts Two and Three of the Superseding Indictment.

b. This office, the United States Department of Justice, Criminal Division, and the United States Attorney's Office for the Southern District of Texas, shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, arising from conduct charged in the Superseding Indictment.

c. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

## 5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

## 6. WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or

information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

   a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

   c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

   (1) criminal convictions, history of drug abuse, and mental illness; and

   (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all

monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

Conspiracy

1. From in or about 2014 and continuing through on or about the date of the Superseding Indictment in Southern District of Texas Criminal Case No. 4:16-cr-385-S, in the Southern District of Texas and elsewhere within the United States, an agreement existed between two or more persons to commit the crime of Wire Fraud, Impersonation of a Federal Officer or Employee, Identification Fraud, Access Device Fraud, and/or Money Laundering;

2. The defendant became a member of the conspiracy knowing of at least one of its unlawful objects and intending to help accomplish it; and

3. At least one member of the conspiracy knowingly committed an overt act in furtherance of the conspiracy after the defendant became a member of the conspiracy and before the conspiracy ended.

10. **FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

b. Beginning in 2011, agents with Homeland Security Investigations, the Treasury Inspector General for Tax Administration, the Department of Homeland Security-Inspector General, and elsewhere, began investigating and ultimately identified a complex

fraud and money laundering scheme in which individuals from call centers located in Ahmedabad, India impersonated government tax and immigration officials, and others, and called potential victims located in the United States to defraud them out of money, often threatening them with arrest, imprisonment, fines, or deportation if they did not pay alleged taxes or penalties to the government. The scam callers convinced the victims to pay or transfer often large amounts of money to the scammers through various methods. In order to liquidate the proceeds derived from victims of this scheme, numerous U.S.-based individuals (also known as "runners") operating in various geographic locations were employed by the India-based call center conspirators. The conspirators liquidated the victims' funds in various ways and in a closely coordinated fashion between the call centers, runners, and associates via email, text and instant messaging services such as WhatsApp. In a typical scenario, call centers directed runners to purchase general purpose reloadable (GPR) cards and transmit the unique card number to India-based conspirators who registered the cards online or via telephone using the misappropriated personal identifying information (PII) of U.S. citizens. The India-based conspirators then loaded these GPR cards with funds obtained from numerous victims. The runners used the GPR cards in their possession, loaded with victims' funds, to purchase money orders they deposited into the bank account of another person. This fraud activity often occurred on the same day, usually within hours; too quickly for the victim to report the fraud to law enforcement and/or financial institutions in an effort to successfully freeze and recover their funds. For their services, the runners would earn a specific fee or a percentage. In addition to laundering victims' funds using GPR cards, runners also received victims' funds via MoneyGram and Western Union wire transfers using fictitious identities/false identification documents, direct bank deposits by victims, and iTunes or other gift cards that victims purchased.

  c.  During the course of the investigation, agents identified defendant RAMAN PATEL as a domestic runner involved in this criminal scheme.

  d.  Defendant RAMAN PATEL was a domestic runner who liquidated victim scam funds in and around south-central Arizona, at the direction of co-defendant

BHAVESH PATEL, while at times working with co-defendant RAJESH KUMAR.

   e. During the course of his involvement in the conspiracy, defendant RAMAN PATEL engaged in various activities in furtherance of the conspiracy, including but not limited to:

   (1) Vacating scam proceeds from GPR cards and purchasing money orders with those funds, per the instructions of co-defendant BHAVESH PATEL;

   (2) Serving as a driver for co-defendants BHAVESH PATEL and RAJESH KUMAR to transport them to various locations for GPR card liquidation and related purposes; and

   (3) Sending bank deposit receipts related to the processing of victim payments and/or fraud proceeds to India-based co-defendant TARUN SADHU and others via email and document scan services offered by retail stores such as Office Max, Office Depot, and Staples.

   f. Specifically, on or about September 11, 2014, organizational co-defendant WORLDWIDE SOLUTION Callers telephonically extorted victim Ana K., a resident of Centennial, CO, of $7,599 by fraudulently purporting to be IRS employees, threatening arrest and demanding immediate payment for alleged tax violations. On or about the same date, WORLDWIDE SOLUTION Callers directed victim Ana K. to purchase nine prepaid Reloadit cards with the stored value of $7,599 and transmit the PINs associated with those Reloadit cards to the Callers. On or about the same date, WORLDWIDE SOLUTION conspirators transferred victim Ana K.'s scammed funds from the Reloadit cards to five PayPower GPR cards. Between on or about September 4, 2014 and September 11, 2014, WORLDWIDE SOLUTION conspirators registered the GPR cards loaded with Ana K.'s scammed funds using the misappropriated PII of five individuals. On or about September 11, 2014, WORLDWIDE SOLUTION conspirators vacated the five GPR cards loaded with victim Ana K.'s scammed funds in Maryland and Arizona. On or about October 15, 2014, co-defendant TARUN SADHU emailed a WORLDWIDE SOLUTION conspirator a log covering TARUN's card processing activity occurring between December 13, 2013

and October 15, 2014. Entries in the log for September 11, 2014 included the amount "950" and the last four (4) digits of one of the GPR cards (-6500) that was funded by victim Ana K. on the same date. The card number was under the column heading "Bhavesh VRN". Transaction records for one of the GPR cards funded by victim Ana K. showed that the card was used in a transaction in Mesa, AZ on September 11, 2014 in the amount of $949.70. On or about October 22, 2014, defendant RAMAN PATEL purchased two money orders at a Walmart store in Mesa, AZ using one of the GPR cards (-6500) loaded with victim Ana K. scammed funds.

  g. Defendant RAMAN PATEL knew that the GPR cards that he and his co-conspirators used to buy money orders, once the GPR cards had been activated and loaded with victim scam funds by other co-conspirators, contained funds derived from some form of unlawful activity.

This stipulation does not attempt to set forth every aspect of Defendant's involvement in the case, but rather to set forth those facts necessary to serve as a factual basis for Defendant's guilty plea in this case.

  h. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

This agreement has been read to me in my native language, Hindi and/or Gujarati, and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself

by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

10/29/2017
Date

Raman Patel
RAMAN PATEL
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

I translated or had translated this agreement from English into Hindi and/or Gujarati to the defendant on the 29th day of October, 2017.

10/29/2017
Date

Jeanette Alvarado
JEANETTE ALVARADO
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

Date 6 Nov 17

JOSEPH E. KOEHLER
Assistant U.S. Attorney

KENNETH A. BLANCO
Acting Assistant Attorney General
U.S. Department of Justice, Criminal Division

Date 11/6/17

J. MICHAEL SHECKELS
Trial Attorney, HRSP

## ACCEPTANCE BY THE COURT

Date 1/29/18

John J. Tuchi
United States District Judge